IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CR-217-D
No. 5:19-CV-196-D

ANTHONY DAVID BROWN,             )
                                 )
        Petitioner,              )
                                 )
    v.                           )        **ORDER**
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Respondent.              )

On May 9, 2019, Anthony David Brown ("Brown" or "petitioner"), proceeding through counsel, moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his 216-month sentence [D.E. 425]. On August 12, 2019, the court stayed the case pending a decision of the United States Court of Appeals for the Fourth Circuit in United States v. Ali, 991 F.3d 561 (4th Cir. 2021). See [D.E. 430]. On April 20, 2021, Brown, proceeding pro se, moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 472]. On August 11, 2021, counsel filed a memorandum in support of Brown's motion for compassionate release [D.E. 487]. On August 25, 2021, the government responded in opposition to Brown's motion for compassionate release [D.E. 492]. On September 27, 2021, the government moved to dismiss Brown's section 2255 motion [D.E. 494] and filed a memorandum in support [D.E. 495]. On September 30, 2021, Brown responded in opposition [D.E. 496]. As explained below, the court lifts the stay, grants the government's motion to dismiss, dismisses Brown's section 2255 motion, and denies Brown's motion for compassionate release.

I.

In 2009 and 2010, Brown and five other men committed a series of horrific armed robberies in Eastern North Carolina. See Presentence Investigation Report ("PSR") [D.E. 288] ¶¶ 4–37. On October 31, 2011, Brown pleaded guilty to conspiracy to interfere with interstate commerce by robbery in violation of 18 U.S.C. § 1951 (count one) and using and carrying a firearm during and in relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 2, 924(c)(1)(A) (counts three and five). See [D.E. 118, 119]. On August 27, 2012, the court held Brown's sentencing hearing and adopted the facts set forth in the PSR. See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 288]; [D.E. 301, 306]. After resolving Brown's objections to the PSR, the court calculated Brown's offense level to be 32, his criminal history category to be I, and his advisory guideline range to be 121 to 151 months' imprisonment on count one, 84 months' consecutive imprisonment on count three, and 300 months' consecutive imprisonment on count five. See PSR ¶¶ 49, 67–140, 142–47. After granting the government's motion for a downward departure and thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Brown to 92 months' imprisonment on count one, 84 months' consecutive imprisonment on count three, and 40 months' consecutive imprisonment on count five, for a total term of 216 months' imprisonment. See [D.E. 306]. Brown did not appeal. See [D.E. 425] 1.

II.

In his section 2255 motion, Brown argues that under Johnson v. United States, 576 U.S. 591 (2015), Hobbs Act robbery no longer qualifies as a crime of violence and thus cannot serve as a predicate offense for Brown's section 924(c) convictions in counts three and five. See [D.E. 425] 4. The government disagrees and argues that Brown's motion is untimely, procedurally defaulted, and fails to state a claim. See [D.E. 495] 1.

2

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

Brown's motion is untimely. Section 2255(f) contains a one-year statute of limitations. Section 2255(f) provides that the one-year clock is triggered by one of four conditions, whichever occurs last:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f); see Johnson v. United States, 544 U.S. 295, 299–300 (2005); Whiteside v. United States, 775 F.3d 180, 182–83 (4th Cir. 2014) (en banc).

Brown bases his claim solely on the right recognized by the Supreme Court in Johnson. See [D.E. 425] 4. The Supreme Court decided Johnson on June 26, 2015. See Johnson, 596 U.S. at 591. On April 18, 2016, the Supreme Court decided Welch v. United States and made Johnson applicable retroactively on collateral review. See 578 U.S. 120, 135 (2016). Brown filed his motion to vacate on May 9, 2019, years after the Supreme Court decided Johnson and Welch. See [D.E. 425]. Brown asserts his delay is "excusable by neglect" but gives no reason for why he delayed or any other details to support his explanation. Id. at 10. Furthermore, Brown has not plausibly alleged that his motion was filed within one year after his conviction become final, that any governmental action prevented him from filing a timely motion, or that his motion is based on facts that could not have been discovered earlier through the exercise of due diligence. Thus, Brown's section 2255 motion is untimely under section 2255(f), and the court dismisses the motion.

Alternatively, Brown procedurally defaulted his claim by failing to raise it on direct appeal. Thus, the general rule of procedural default bars Brown from presenting his claim under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621–22 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Brown has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged error about which he now complains.

4

See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Thus, the claim fails.

Alternatively, Brown's plea agreement contains a collateral-attack waiver. See [D.E. 119] ¶ 2(c). In the waiver, Brown agreed

> to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting the Defendant's right to appeal based upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the Government of any of its rights to appeal provided by law.

Id. In light of Brown's Rule 11 proceeding, the collateral-attack waiver is enforceable. See [D.E. 118]; United States v. Copeland, 707 F.3d 522, 528–30 (4th Cir. 2013); United States v. Davis, 689 F.3d 349, 354–55 (4th Cir. 2012) (per curiam); United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012); United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005). Brown's claim falls within the collateral-attack waiver, and the waiver bars the claim.

Alternatively, the claim fails on the merits. In United States v. Davis, which the Supreme Court decided after Brown filed his section 2255 motion, the Court held that Congress's definition of "crime of violence" in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. See 139 S. Ct. 2319, 2327–36 (2019). Likewise, in Johnson, the Court held that Congress's definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(ii) was unconstitutionally vague See Johnson, 576 U.S. at 593–606. Neither decision affected section 924(c)'s "force" clause. Here, Brown's Rule 11 proceeding and plea agreement predicated Brown's convictions on counts three and five on Hobbs Act robbery. See [D.E. 118]; [D.E. 119] 4–5. Hobbs Act robbery and aiding and abetting Hobbs

5

Act robbery are both crimes of violence under section 924(c)'s force clause and may serve as a predicate felony for a section 924(c) conviction. See Ali, 991 F.3d at 574; United States v. Mathis, 932 F.3d 242, 265–66 (4th Cir. 2019). Thus, Johnson does not help Brown, and Brown fails to state a claim on the merits.

After reviewing the claim presented in Brown's motion, the court finds that reasonable jurists would not find the court's treatment of Brown's claim debatable or wrong and that the claim does not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### III.

Brown moves for compassionate release under the First Step Act. See [D.E. 472, 487]. The government opposes Brown's motion. See [D.E. 492].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence

6

under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

7

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

---

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

8

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In his motion for compassionate release, Brown states that he has satisfied the exhaustion requirement. See [D.E. 472] 3; [D.E. 487] 1–2. On September 2, 2020, Brown applied to the warden of Fort Dix Federal Correctional Institution for compassionate release. See [D.E. 472] 3; [D.E. 487] 1–2. On March 1, 2021, Acting Warden N'Diaye denied Brown's request. See [D.E. 487-1]. Therefore, Brown has met the exhaustion requirement, and the court addresses his motion on the merits. Cf. United States v. Muhammad, 16 F.4th. 126, 130 (4th Cir. 2021).

9

Brown seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Brown cites the COVID-19 pandemic, his health conditions (asthma and hypertension), his rehabilitation efforts, and his release plan. See [D.E. 472] 5, 9–13; [D.E. 487] 2–6.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Brown argues that his asthma and hypertension put him at heightened risk of serious infection from COVID-19. See [D.E. 487] 3–5; cf. [D.E. 472] 5. Brown references studies about the severity of COVID-19, the effect of his health conditions on the risks associated with COVID-19, and the difficulty of controlling COVID-19 in prison. See [D.E. 487] 4–5. Brown, however, has already contracted and recovered from COVID-19, thus obtaining natural antibodies. See [D.E. 472-1] 2. Moreover, Brown has refused the COVID-19 vaccine. See [D.E. 487] 4; [D.E. 492-1]; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred."); see also United States v. Baeza-Vargas, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts that "have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances"). Brown has provided no medical or other reason why he cannot receive the COVID-19 vaccine. Beyond generalized arguments about the spread of COVID-19 within the federal facility at Fort Dix FCI, Brown does not argue he is unable to manage his health conditions while incarcerated or that the BOP is not treating his conditions. Cf. [D.E. 487]

10

4 (noting the BOP provides Brown with inhalers to treat his asthma). Accordingly, reducing Brown's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Brown's health conditions, his efforts at rehabilitation, and his release plan are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Brown offers a release plan that includes staying with family members and working as a general maintenance worker at a healthcare facility. See [D.E. 472] 9. Notably, the wide availability of COVID-19 vaccines and Brown's natural antibodies greatly diminish the risk to Brown from COVID-19 inside or outside prison. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Regardless, the section 3553(a) factors counsel against reducing Brown's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Brown is 33 years old and is incarcerated for conspiracy to interfere with commerce by robbery and two counts of using and carrying a firearm during an in relation to a crime of violence and aiding and abetting. See PSR ¶¶ 1–3; [D.E. 306]. In 2009 and 2010, Brown and his co-conspirators robbed at gun point numerous stores in Goldsboro, Princeton, and Wilson, North Carolina, stealing thousands of dollars. See PSR ¶¶ 4–37. Brown was a leader in the conspiracy. See, e.g., id. ¶¶ 27, 33, 122. And in one robbery, Brown and a co-conspirator recruited and paid two minors to help them commit the robbery. See id. ¶¶ 27–29. Before his federal conviction, Brown already had a felony conviction for robbery with a dangerous weapon. See id. ¶ 48.

11

Brown has made some positive efforts while incarcerated. See [D.E. 472-1] 1; [D.E. 487] 5. For example, he has earned his GED and taken multiple educational and vocational training courses. See [D.E. 472-1] 1; [D.E. 487] 5. Brown has also worked to pay off his restitution balance. See [D.E. 472-1] 2. However, Brown has incurred six disciplinary infractions while incarcerated. See id. at 1; [D.E. 492] 22; [D.E. 492-2] 1–2.

The court must balance Brown's mixed conduct while incarcerated and his latest conviction with his extraordinarily serious criminal conduct and criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Brown's potential exposure to COVID-19, his medical conditions, his rehabilitative efforts, his serious misconduct in prison, and his release plan. The court recognizes that Brown's supportive family would help him if he was released. See [D.E. 472] 9, 12. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Brown's arguments, the government's persuasive response, the need to punish Brown for his serious criminal behavior, to incapacitate Brown, to promote respect for the law, to deter others, and to protect society, the court denies Brown's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 494], DISMISSES petitioner's section 2255 motion [D.E. 425], DENIES petitioner's motion for compassionate release [D.E. 472, 487], and DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This 17 day of February, 2022.

JAMES C. DEVER III
United States District Judge